UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| AMBER HARLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16 CV 26 CDP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Amber Harlan brings this action pursuant to 42 U.S.C. § 1381 *et seq.* and 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's decision denying her application for supplemental security income. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### Procedural History

Plaintiff alleged she became disabled beginning January 27, 2015, because of bipolar and anxiety disorders, degenerative and herniated disc disease, osteoarthritis, diabetes, hypothyroidism, migraines, and obesity.

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

Plaintiff's application was initially denied on April 29, 2015. After a hearing before an ALJ on October 14, 2015, the ALJ issued a decision denying benefits on December 4, 2015. On March 9, 2016, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Harlan contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Harlan specifically argues that the ALJ erred by according improper weight to certain opinion evidence in this case and improperly assessed her credibility. Harlan asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Harlan's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF #22-1) to the extent they are admitted by the Commissioner (ECF #27-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #27-2), as they are unrefuted by Harlan. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties'

arguments.

## Discussion

A.    Legal Standard

To be eligible for disability insurance benefits under the Social Security Act,
Harlan must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211,
1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552,
555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to
engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only
if [her] physical or mental impairment or impairments are of such severity that
[she] is not only unable to do [her] previous work but cannot, considering [her]
age, education, and work experience, engage in any other kind of substantial
gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a
five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482
U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the
claimant is engaged in substantial gainful activity. If the claimant is working,
disability benefits are denied. Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole. *See*

*e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider the factors set out by *Polaski*

*v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the claimant's daily activities; (2) the duration,
> frequency, and intensity of the pain; (3) precipitating and
> aggravating factors; (4) dosage, effectiveness and side effects of
> medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not

credible and gives good reasons for the findings, the court will usually defer to the

ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In her written decision, the ALJ found that Harlan had not engaged in substantial gainful activity since the alleged onset date of January 27, 2015. The ALJ found Harlan's bipolar disorder, anxiety disorder, borderline personality disorder, post-traumatic stress disorder, depression, degenerative disc disease, obesity, and migraines to be severe impairments, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18.) The ALJ found Harlan to have the RFC to perform light work with the following limitations:

> She can never climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs. She can occasionally stoop, crouch, kneel, crawl and balance. She must avoid concentrated exposure to vibration, moving machinery, and unprotected heights. She is limited to simple and routine tasks and simple work-related decisions. She can have no contact with the public and can have occasional contact with co-workers and supervisors. She must be afforded the option to sit or stand whereby she may change positions every 60 minutes for 3-5 minutes while remaining at the workstation and on task. She must be allowed to be off-task up to ten percent of the time.

(Tr. 15-16.) The ALJ found Harlan had no past relevant work. (Tr. 20)

Considering Harlan's RFC and her age, education, and work experience, the ALJ relied upon vocational expert testimony to support a conclusion that Harlan could perform other work as it exists in significant numbers in the national economy, and specifically as a hand packager, inspector, and sorter. The ALJ therefore found Harlan not to be disabled at any time from January 27, 2015, through the date of the decision. (Tr. 20-21.)

Harlan claims that this decision is not supported by substantial evidence because the ALJ accorded improper weight to the opinions of her treating physicians and improperly assessed her credibility in determining her RFC.

C.    Weight Accorded to Opinion Evidence

When evaluating opinion evidence, an ALJ is required to explain in her decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(e)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 404.1527(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to

observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord

that and any other medical opinion of record, including the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, whether the physician provides support for her findings,

whether other evidence in the record is consistent with the physician's findings,

and the physician's area of specialty. 20 C.F.R. § 404.1527(c), (e). Inconsistency

with other substantial evidence alone is a sufficient basis upon which an ALJ may

discount a treating physician's opinion. *Goff v. Barnhart*, 421 F.3d 785, 790-91

(8th Cir. 2005). The Commissioner "will always give good reasons in [the] notice

of determination or decision for the weight [given to the] treating source's

opinion." 20 C.F.R. § 404.1527(c)(2).

Harlan contends that the ALJ improperly weighed the opinion of her treating

psychiatrist and failed to consider the opinion of her treating physician. For the

reasons that follow, the ALJ did not substantially err.

Harlan first contends that the ALJ erred in failing to discuss the opinion of her treating primary care physician, Michael Rothermich, M.D. Dr. Rothermich wrote a "To Whom It May Concern" letter dated October 27, 2014, stating that Harlan had been his patient for 10 years and had "requested a letter of support for her reapplication for disability." Dr. Rothermich opines that Harlan "appears to be completely disabled at this time and for the foreseeable future." He states that his opinion is based on Harlan's reports of a long history of bipolar depression, medication regimen, and her estimate that her symptoms are only 30% controlled. Dr. Rothermich recommended she see a psychiatrist in September of 2014, but "as she is uninsured, it has been extremely difficult to have her seen by specialists."

The ALJ's failure to discuss Dr. Rothermich's letter does not constitute reversible error for several reasons. First, it is dated three months before Harlan's onset date. Second, his conclusion that Harlan "appears to be completely disabled at this time and for the foreseeable future" is not a medical opinion and is not entitled to any deference. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (determination of disability is solely within province of Commissioner); 20 C.F.R. § 416.927(d) (opinions on the ultimate issue of disability not dispositive of issue). Third, it is primarily a recitation of Harlan's self-reported symptoms. For example, the estimate that her symptoms are only "30% controlled" is Harlan's own estimate, not Dr.

Rothermich's.  Finally, while Harlan did receive mental health treatment from Dr. Rothermich prior to her onset date, his treatment records reveal that he was primarily seeing Harlan for back problems and pain, not mental health issues, after her onset date.  (Tr. 444-47).  For these reasons, the ALJ did not substantially err by failing to discuss this letter in her formulation of Harlan's RFC.

Harlan next argues that the ALJ erred in her consideration of Syed K. Imam, M.D.'s opinion.  Dr. Imam was Harlan's treating psychiatrist since March 2015.  He saw Harlan three times between March and November 2015, when he completed a psychiatric assessment form in connection with Harlan's claim for benefits.  Dr. Imam opined that Harlan met the disability criteria for two listed impairments: Listing 12.04 (Affective Disorder) and Listing 12.06 (Anxiety-Related Disorder).  Dr. Imam diagnosed Harlan with bipolar disorder type I, PTSD, generalized anxiety disorder, and borderline personality disorder.  He stated that Harlan thought about cutting herself in May 2015 and her mood was labile, with depressive and manic episodes.  According to Dr. Imam, Harlan could rarely have contact with supervisors, coworkers, and the general public because she has high anxiety, gets angry easily, and experiences severe panic attacks.  Dr. Imam believed that Harlan could occasionally make judgments on simple work-related decisions and carry out short, simple instructions, but could rarely respond appropriately to work pressures or changes in routine.  Dr. Imam opined that

Harlan would frequently be absent from work, her decision making and concentration would be affected by her impairments, and she would be off-task because of her symptoms more than 20% during an average workday. (Tr. 578-82). The ALJ accorded "very little weight" to this opinion, finding it to be inconsistent with the medical evidence as a whole, including Dr. Imam's treatment notes. (Tr. 19). Harlan argues that this was error, given that the opinion was rendered by a treating physician and thus was entitled to significant if not controlling weight. Because the ALJ's reasons for discounting Dr. Imam's opinion are supported by substantial evidence on the record as a whole, I defer to that determination.

The medical evidence of record shows that Harlan began treatment with Dr. Imam in March 2015 after a brief psychiatric hospitalization in February 2015 for a reported overdose of her prescription medication and superficial cutting. Harlan denied an attempted overdose but was in distress, aggressive, frantic, and evasive. (Tr. 374-76). Before being transferred to in-patient hospitalization later that day, Harlan had calmed down, was agreeable, and clinically stable. (Tr. 381). Initial psychiatric evaluation upon in-patient admission revealed Harlan's behavior to be within normal limits, with normal thought processes and speech, a sad mood, and no suicidal ideas, paranoia, or hallucinations. Her cognition was fair, and insight and judgment were limited. She was assessed with bipolar affective disorder,

depressive disorder, and generalized anxiety disorder and assigned a GAF score of 11-20. (Tr. 390-92). Upon discharge three days later, Harlan's depression, anxiety, stress management skills, impulse/anger control, motivation, and treatment compliance were all improved. Although Harlan still had difficulty with motivation, she had no suicidal ideas, aggressive thoughts, or endangering behaviors. She was prescribed psychotropic medications and assigned a GAF score of 46-50. (Tr. 395-97).

At her initial consultation with Dr. Imam on March 3, 2015, Harlan reported being diagnosed with bipolar affective disorder in her early teens and struggling with suicidal ideations through the years. She reported cutting herself to feel better and outbursts of rage. She was taking several psychotropic medications but still felt anxious. She described her current symptoms as depression, memory loss, headaches, crying spells, and anxiety in crowds. Harlan stated she had been recently raped by a family friend. She also reported a history of childhood physical and sexual abuse. Harlan reported past mood swings without psychotic symptoms. Harlan stated that she had been on psychotropic medications for about one year. She reported seeing a therapist. Dr. Imam observed Harlan to be cooperative, well oriented x 4, and not in apparent distress. Her speech was within normal rate, rhythm, tone, and volume. Flow of thought was goal oriented, with thought content expressing low motivation, no interest, and feelings of

worthlessness and helplessness. Harlan denied suicidal ideations or hallucinations. She displayed average intellect and intact insight and judgment. Mental status 6 examination revealed a defensive and guarded presentation, an anxious, depressed, irritable, and labile mood, avoidance of eye contact, and paranoid delusions. Imam assessed Harlan with bipolar disorder, anxiety disorder, posttraumatic stress disorder, and borderline personality disorder. She was assigned a GAF score of 50, given psychotropic medications, and advised to return in a couple of months. (Tr. 415-22).

At her next visit in April 2015, Dr. Imam observed Harlan to be cooperative, well oriented x 4, and not in apparent distress. Her speech rate, rhythm, tone, and volume were all normal. Thought flow was goal directed, and Harlan's thought content expressed low motivation and feelings of worthlessness and helplessness. Harlan denied having suicidal thoughts or hallucinations. Her intellect was average and her insight and judgment were intact. She was well-oriented, and her appearance was casual but disheveled. Harlan's presentation was defensive, guarded, and distracted, and her mood was anxious and irritable. She was assigned a GAF score of 50 and her psychotropic medications were continued. (Tr. 524-30). Dr. Imam's observations and assessments remained unchanged at Harlan's next visit on August 18, 2015. (Tr. 532-39).

While the evidence of record shows that Harlan experienced limitations on

13

account of her mental impairment, substantial evidence supports the ALJ's

conclusion that the limitations were not as severe as opined by Dr. Imam in his

psychiatric assessment. While Harlan certainly described current symptoms during

her visits, a majority of Dr. Imam's treatment notes pertained to Harlan's self-

reported psychiatric history, much of it from her childhood. Dr. Imam's

observations of Harlan as cooperative, well oriented, in no distress, with intact

insight and judgment, as well as the frequency of treatment (one visit every few

months), are all inconsistent with the severity of limitations opined by Dr. Imam.

As noted by the ALJ, the degree of limitations expressed by Dr. Imam in his

psychiatric assessment are also inconsistent with Harlan's GAF score of 50,[2] which

is at the top of the range of serious symptoms and almost to the moderate range.

The ALJ therefore did not err when she found Dr. Imam's opinion inconsistent

with other substantial evidence of record. *See*, *Julin v. Colvin*, 826 F.3d 1082,

1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight

if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126,

1132 (8th Cir. 2015)); *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ

---

[2]"[A] GAF of 41-50 indicates that the individual has serious symptoms or any serious impairment in social occupational or school functioning." *Nowling v. Colvin*, 813 F.3d 1110, 1115 (8th Cir. 2016). "In recent years, the agency has recognized, and we have noted, that GAF scores have limited importance." *Id*. However, "GAF scores may be relevant to a determination of disability based on mental impairments." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

gave little weight to treating physician's opinion that was inconsistent with treatment records and objective medical evidence, and not supported by physician's own exams and test results).

Here, the ALJ fashioned an RFC to account for Harlan's credible mental limitations by limiting her to simple work requiring limited social interaction. Many of the limitations are actually consistent with Dr. Imam's recommendations, such as eliminating contact with the public to avoid anxiety, routine tasks, simple decision-making, and limited contact with coworkers and supervisors. When assessing a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on her review of the record as a whole. The ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the weight accorded by the ALJ to the medical opinion evidence in this case.

D.    Credibility Analysis

Harlan also argues that the ALJ improperly assessed her credibility. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218. I must defer to the ALJ's credibility

determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor in his decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a

claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly evaluated Harlan's credibility based upon her own testimony, the objective medical evidence of record, her daily activities, and the conservative nature of her treatment.[3] The ALJ summarized Harlan's testimony regarding her daily activities and subjective allegations of pain. Although Harlan cites the familiar adage that the ability to do some light housework does not support a conclusion that she can perform full-time competitive work, *see Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998), the ALJ did not substantially err in considering the nature and extent of her daily activities when evaluating her credibility. *See Julin*, 826 F.3d at 1087 (ALJ may consider inconsistencies between subject complaints and daily living patterns when assessing credibility). The ALJ was not required to fully credit all of Harlan's assertions regarding her limitations given her activities, which included going to church, grocery shopping, going to the pharmacy, regular communications with friends, driving, and game night with friends. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996). The ALJ also discounted Harlan's credibility after noting certain inconsistencies in her testimony, such as claiming a desire to be alone but keeping her daughter home

---

[3] Harlan's assertion that the ALJ did not consider the *Polaski* factors in her credibility assessment is meritless. While she did not specifically cite the case, the factors appear at page 8 of her decision. (Tr. 18).

from school for company. Harlan also testified that she forgets to eat, but she was obese throughout the period under consideration and her medical records did not indicate any substantial weight loss or hypoglycemic episodes. Even if the ALJ could have drawn a different conclusion about Harlan's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara*, 590 F.3d at 610. Here, the ALJ discounted Harlan's subjective complaints only after evaluating the entirety of the record. In so doing, she did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

In assessing Harlan's credibility, the ALJ noted that objective test results did not support the degree of claimed limitations. With respect to Harlan's complaints of back pain, the ALJ noted that her June 2015 x-rays revealed decreased disc height at L5-S1 and some facet arthropathy but were otherwise normal. (Tr. 562). Harlan could heel and toe walk without difficulty, had intact sensation of the lower extremities, and did not have reduced strength. (Tr. 559-60). She was diagnosed with mild L5-S1 degenerative disc disease. (Tr. 561). An MRI taken in July 2015 showed a disc bulge at L5-S1 with stenosis, but Harlan was only prescribed an anti-inflammatory and muscle relaxant for pain. (Tr. 563). Although an epidural steroid injection was recommended, Harlan declined treatment. With respect to

her migraines, the ALJ noted that Harlan told her primary care physician in March

2015 that she obtained relief from Excedrin. (Tr. 444). The fact that Harlan did

not seek or require aggressive treatment for her impairments is relevant to a

determination of disability. *See Clevenger v. Social Security Administration*, 567

F.3d 971, 976 (8th Cir. 2009). The ALJ also determined that the objective medical

evidence of Harlan's mental impairments, summarized above, did not support the

degree of alleged limitations, either. Here, the ALJ concluded that Harlan's

subjective complaints of pain were of limited credibility because they were not

supported by the objective medical evidence of record, an important factor for

evaluating a claimant's credibility. *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir.

1995). The ALJ also properly considered Harlan's poor work history in her

credibility assessment. *See, Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir.

2004) (ALJ may properly consider a claimant's motivation for secondary gain

when assessing credibility); *Julin*, 826 F.3d at 1087 (sporadic work history may

properly be considered in ALJ's credibility assessment).

Where, as here, an ALJ seriously considers but for good reasons explicitly

discredits a claimant's subjective complaints, the Court will not disturb the ALJ's

credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

Substantial evidence in the record as a whole supports the ALJ's credibility

determination, so I will affirm the decision of the Commissioner as within a

"reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011)

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Harlan was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is

affirmed, and Amber Harlan's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of September, 2017.